IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| CONTECH ENGINEERED SOLUTIONS, LLC, an Ohio Limited Liability Company, </br></br>  Plaintiff, </br></br> v. </br></br> APPTECH SOLUTIONS, LLC, f/k/a Appalachian Technology Solutions, LLC, ACS DESIGN, LLC, DANIEL EARLY, and SCOTT EASTER, </br></br>  Defendants. | Civil Action No.: 7:19-cv-00762 |

## MEMORANDUM OPINION AND ORDER

This is a diversity action[1] brought by Contech Engineered Solutions, LLC (Contech) for breach of contract, indemnification, and engineering and design malpractice arising out of the design and construction of wastewater treatment projects in Mora, New Mexico, and Gloucester, Virginia. ACS Design, LLC (ACS Design), David Early, and Scott Easter move to dismiss Contech's claim for common law indemnification. For the reasons stated below, this motion will be denied.

## I. BACKGROUND[2]

Contech is a company that provides site solutions for the construction and development of industry. ACS Design is a water and wastewater engineering firm. Early is the sole current member of ACS Design and Apptech Solutions, LLC (Apptech). Easter is a former member of ACS Design and Apptech. Contech also sues Apptech, a water and wastewater manufacturing and

---

[1] The court may exercise subject matter jurisdiction over this matter because the parties are completely diverse and the amount in controversy exceeds $75,000. 28 U.S.C. § 1332(a)(1); (*see* Dkt. Nos. 3–6.)

[2] The following factual background is taken from the allegations in the amended complaint, which are presumed to be true for purposes of this motions.

engineering solutions provider to the civil engineering industry. Apptech has not made an appearance in this case.

In 2011, the parties entered into a series of written agreements regarding the licensing, design, marketing, and sales of certain products for the wastewater treatment market: a License Agreement, a Design Services Agreement, and a Marketing Agreement. In 2014, defendants in this action sued Contech, alleging that Contech was not performing under these agreements. *See* Case No. 7:14-cv-00568-EKD-RSB. On September 21, 2015, the parties executed an Amended Settlement Agreement and Limited Releases (Settlement Agreement) to resolve the litigation. Contech also preserved claims and rights of action it may have against ACS Design, Apptech, Early, and/or Easter arising out of or related to engineering, design, or other services they provided concerning projects listed on "Schedule A" of the Settlement Agreement. The Mora Project in Mora, New Mexico, and the Waterview Project in Gloucester, Virginia, are identified on Schedule A. According to the Settlement Agreement, defendants agreed to cooperate with Contech by providing engineering and related services at no cost to Contech for the projects listed on Schedule A.

**A. The Mora Project**

The Mora Project was initiated by a Design Build Project Scope and Request for Proposal for a 60,000 gallon per day wastewater treatment plant. Mora hired Energy Independence Partners (EIP) as the general contractor. On March 12, 2014, EIP issued a proposal to Mora in the amount of $1,697,250, which identified EIP, ACS Design, and RMCI, Inc. as the design/build team and engineers for the Mora Project. Contech was hired to fabricate and deliver the wastewater treatment system. One or more of the defendants continued to revise the design for the Mora Project after Contech's fabrication of the treatment system; the revisions continued until at least November 7, 2016. A series of design and engineering errors by defendants resulted in a poorly designed facility

2

requiring numerous design revisions and significant additional work by defendants. EIP abandoned the project and is effectively dissolved. Mora turned to Contech and the defendants for assistance in addressing the design and engineering issues.

Defendants attempted to revise the design for the Mora Project to address its flaws, and defendants represented that their recommended modifications to the treatment system would allow Mora to meet the expected effluent parameters, but they did not. Apptech and ACS Design were experiencing their own financial troubles in early 2016 and could not afford to implement these costly modifications. After a certain time, defendants became unresponsive to requests by Contech regarding corrections to the design. Contech agreed to pay the upfront cost for the required modifications. In exchange, Contech reserved all rights against defendants for reimbursement or recovery of all costs incurred because of the design issues. Defendants were also responsible for project management, contracting, implementation and costs associated with other parts of the Mora Project, including but not limited to the lagoon cleanout, relining, and load banks for the emergency backup power generator.

Contech completed the additional required work and turned the project over to the owner in March of 2019. To date, Contech has paid approximately $536,898 for the costs associated with the faulty design.

**B. The Waterview Project**

The owners of the Waterview Mobile Home Park hired a company called Sydnor Hydro to install and operate an 18,400 gallon per day wastewater treatment plant. One or more of the defendants was the engineer who designed the wastewater system for the Waterview Project. One or more of the defendants also designed and manufactured the control building for the project.

Contech was hired to fabricate and deliver the wastewater treatment system designed by the defendants. Defendants continued to revise the design for the Waterview Project after Contech's

fabrication of the system until 2018. Several design issues and engineering errors resulted in a poorly designed facility requiring numerous design revisions and significant additional work by defendants. Defendants revised the design to address these flaws, falsely representing that the modifications would allow for the Waterview Project to meet the required effluent parameters. Eventually, due to ongoing financial problems, defendants became unresponsive to requests by Sydnor Hydro and Contech regarding corrections to the design.

Contech was required to pay for the cost of the required modifications, and it reserved its rights against defendants for reimbursement. Contech completed work on the Waterview Project in April of 2019. Contech has paid approximately $544,115 for the costs associated with defendants' faulty design on the Waterview Project.

**C. Contech's Claims**

Contech alleges claims for engineering and design malpractice, negligence, breach of the Settlement Agreement, contractual indemnification, and common law indemnification. Contech seeks damages of no less than $1,081,013.

II. ANALYSIS

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In other words, the plaintiff must plead facts that "allow the court to draw the reasonable inference that the defendant is liable" and must demonstrate "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. When ruling on a motion to dismiss, a court must accept the complaint's factual allegations as true. *Id.*

4

Defendants move to dismiss count five, Contech's claim for common law indemnification. They argue that under Virginia (and Ohio) law,[3] no duty of indemnity can be implied when there is an express contractual provision for indemnity between the parties. *See Fidelity & Deposit Co. v. Bristol Steel & Iron Works, Inc.*, 722 F.2d 1160, 1163 (4th Cir. 1983) ("[R]esort to implied immunity principles is improper when an express indemnification exists . . . .") (applying Virginia law); *Dacotah Mktg. & Research, LLC v. Versatility, Inc.*, 21 F. Supp. 2d 570, 580 (E.D. Va. 1998) ("Principles of implied indemnity do not operate in the face of an express indemnification contract."). "The purpose of an indemnity provision is to pre-determine how potential losses incurred during the course of a contractual relationship will be distributed between the potentially liable parties." *Collier v. Land & Sea Rest. Co., LLC*, 972 F. Supp. 2d 870, 877 (W.D. Va. 2013).

In response, Contech clarifies that the amended complaint alleges that Contech has an indemnification agreement under the Design Services Agreement with ACS Design, but not Early and Easter. (*See* Am. Compl. ¶ 108, Dkt. No. 6 (alleging that pursuant to the "Design Services Agreement, ACS Design is required to indemnify, defend and hold harmless Contech, or any of its affiliates . . . from any and all claims resulting from the breach of the representations and warranties set forth in that agreement").) The amended complaint also alleges that Early and Easter, along with the other defendants, are signatories to the Settlement Agreement, which according to Contech permits claims for indemnity and other losses incurred by Contech for engineering activities performed by defendants on certain projects. Contech's claims address design errors made by ACS Design both during the time when the Design Services Agreement was in effect and after the Settlement Agreement was executed. (*See* Am. Compl. ¶¶ 41, 42, 68, 71.) Contech asserts that the Settlement Agreement created an independent obligation for Early, Easter, ACS Design, and

---

[3] Neither party conducted a choice of law analysis, but as the briefing suggests, the parties agree that either Virginia or Ohio law applies in this case. It is not necessary for the court to determine which body of law applies to address this motion.

5

Apptech to cooperate with Contech by providing engineering and related services at no cost to Contech for the projects listed on Schedule A of the Settlement Agreement. As such, ACS Design may be responsible for errors made while the Design Services Agreement was in effect and (along with the other defendants) after the Settlement Agreement was in effect.

The court has analyzed the amended complaint, and the court appreciates and understands the cases cited by defendants in support of their motion. However, the court finds that it must deny defendants' motion to dismiss. First, the court does not have before it the Settlement Agreement, the Design Services Agreement, or any other agreement referenced in the amended complaint. Contech did not attach these documents to its amended complaint or to its brief. In its response brief, Contech quoted from a section of the Settlement Agreement titled "Reserved Claims." (Pl.'s Br. 3–4, Dkt. No. 19.) This section, at least as it is quoted in Contech's brief, contains language pertaining to "indemnities," cross-references other sections of the Settlement Agreement, and references the Design Services Agreement.[4] Without seeing the entire Settlement Agreement and

---

[4] The full text of the section as it is quoted in Contech's brief is as follows:

> 9. **Reserved Claims**: Notwithstanding any other provision of the Settlement Agreement, including without limitation the limited mutual release set forth in Sections 8(a) and 8(b), [Defendants] and Contech herby expressly acknowledge and agree that Sections 8(a) and 8(b) are not, and shall not be understood or interpreted, as a release of any and all causes of action, suits, debts, sums of money, warranties, accounts, controversies, trespasses, liabilities, bonds, bills, agreements, attorney's fees, promises, claims, demands, liens, contributions, *indemnities, or any losses of any kind or nature, whatsoever, in law or equity*, in contract, tort or otherwise, by statute or at common law, asserted or unasserted, ascertained or unascertained, known or unknown, foreseeable or unforeseeable, which Contech has, ever had, or may have (collectively the "Reserved Claims") against any or all of the [Defendants] arising out of or related to a breach of Article 6 of the Design Services Agreement, *or arising out of or related to engineering, design or other services provided by any of the Plaintiffs for any of the projects identified on Schedule A*; and any and all such Reserved Claims against any or all of the [Defendants] arising out of or related to a breach of Article 6 of the Design Services Agreement, or arising out of or related to engineering, design or other services provided by any of the [Defendants] for any of the projects identified on Schedule A are specifically reserved and not released as part of this Settlement Agreement, provided, however, that Contech agrees it shall limit its recovery against [Defendants]' available insurance coverage. Contech agrees not to make a claim against [Defendants] where the amount in dispute for the individual project identified in Schedule A is less than $25,000.

the other agreements, especially the Design Services Agreement, the court lacks the critical context that is necessary to understand the full extent of the contractual relationship between the parties and how it was allegedly breached. The court recognizes, as defendants argue, that it could consider the terms of these contracts without converting this motion into a summary judgment motion, but the court declines to do so. *See Phillips v. LCI Int'l, Inc.*, 190 F.3d 609, 618 (4th Cir. 1999) (explaining that a court may consider matters outside the pleadings on a 12(b)(6) motion that are "integral to and explicitly relied on in the complaint"). Indeed, as the moving parties, it was defendants' responsibility to provide these documents so the court could make a fully informed determination as to whether defendants are entitled to dismissal of count five. Given the nature of the claims and what seems like a complicated contractual arrangement, and the court finding itself without the benefit of the contracts, the court finds that the issue is best resolved after further factual development, not on the pleadings.

### III. CONCLUSION

Based on the foregoing, it is HEREBY ORDERED that the motion to dismiss count five of the amended complaint (Dkt. No. 17) is DENIED.

Entered: April 6, 2020.

*/s/ Elizabeth K. Dillon*
Elizabeth K. Dillon
United States District Judge

---

(Pl.'s Br. 3–4 (emphasis added).)